# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| JENNIFER C. RUFF | § | |
| | § | |
| *Appellant,* | § | Civil Action No. 4:22-cv-00321 |
| | § | (Consolidated Lead Case) |
| v. | § | Judge Mazzant |
| | § | |
| SUZANN RUFF and CHRISTOPHER | § | |
| MOSER, TRUSTEE | § | |
| | § | |
| *Appellees.* | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court is Appellant Jennifer C. Ruff's appeal from a final judgment entered by the United States Bankruptcy Court for the Eastern District of Texas (Dkt. #1).  This appeal presents the Court with myriad issues arising from the Bankruptcy Court's denial of Appellant Jennifer C. Ruff's request for a declaratory judgment and its judgment in favor of Appellee Suzann Ruff.  Having considered the briefs, the record, and the relevant pleadings, the Court finds that the Bankruptcy Court's decision should be **AFFIRMED**.

## BACKGROUND

This case represents one of many fronts in a multi-pronged family conflict over the estate of Arthur Ruff, who died in 1998, leaving considerable assets to his widow, Appellee Suzann Ruff (Dkt. #9 at pp. 7–8).  After Arthur's passing, Suzann Ruff turned to one of her sons, Michael Ruff, to manage the millions of dollars in assets that she inherited from her late husband.  That decision set in motion decades of litigation involving allegations of fraud and financial misconduct, featuring stops in Dallas County Probate Court, an American Arbitration Association ("AAA") arbitration, several state district courts, the Court of Appeals for the Fifth District of Texas, and

federal bankruptcy courts around the state.[1]

One of those related bankruptcies is *In re JMV Holdings, LLC*, which was filed in the United States Bankruptcy Court for the Eastern District of Texas on November 9, 2018 (the "Main Case"). *In re JMV Holdings, LLC*, Case No. 18-42552, (Bankr. E.D. Tex. Nov. 9, 2018) (Main Case No. 18-42552, Dkt. #1). Appellant Jennifer Ruff is the wife of Michael Ruff and a creditor in the Main Case (Dkt. #9 at p. 8).[2] Jennifer is also the plaintiff in the adversary proceeding underlying this appeal (the "Adversary Case"). *See Ruff v. Ruff*, Adv. Case No. 21-4003, (Bankr. E.D. Tex. Jan. 11, 2021) (Adversary Case No. 21-4003, Dkt. #1).

## I.      The Ruff Management Trust and Related Litigation

In 2007, Suzann and Michael formed the Ruff Management Trust (the "Management Trust") (Adversary Case No. 21-4003, Dkt. #54 ¶ 6). Suzann was both the settlor of the Management Trust and its primary beneficiary. Michael was the Management Trust's sole trustee. Suzann transferred most of her assets to the Management Trust, to be controlled by Michael for her benefit.

Within two years, the relationship between Suzann and Michael grew strained, and Suzann sought "separation from [Michael] financially" (Adversary Case No. 21-4003, Dkt. #67 at p. 26:6–10). To that end, Michael resigned his position as trustee of the Management Trust in November 2009 (Adversary Case No. 21-4003, Dkt. #54 ¶ 9). In exchange for his resignation, Michael persuaded his mother to sign a Family Settlement Agreement, under which Suzann released any claims that she had against Michael. Frost Bank then succeeded Michael as

---

[1] *See, e.g.*, *Ruff v. Ruff*, No. 05-21-00157-CV, 2022 WL 420353 (Tex. App.—Dallas Feb. 11, 2022, pet. denied); *Ruff v. Ruff*, No. 11-20-00122-CV, 2021 WL 388707 (Tex. App.—Eastland Feb. 4, 2021, pet. denied); *Ruff v. JMV Holdings*, No. 17-7279 (193rd Dist. Ct., Dallas Cnty., Tex. Dec. 18, 2017).

[2] For clarity, the Court adopts the practice of the Bankruptcy Court below and will refer to Arthur, Suzann, Michael, and Jennifer by their first names.

the trustee of the Management Trust.  As a part of the transition to Frost, Suzann signed an agreement that released Frost and the other Ruff children—but not Michael—from liability relating to the Management Trust (Adversary Case No. 21-4003, Dkt. #56 ¶ 8).  That agreement contained an arbitration clause (Adversary Case No. 21-4003, Dkt. #56, Findings of Fact ¶ 8).

Suzann subsequently sued Michael in Dallas County Probate Court, alleging that Michael abused his position as trustee of the Management Trust by swindling Suzann out of millions of dollars through a series of fraudulent transactions.  *In re Ruff Mgmt. Trust*, No. PR-11-02825-1 (Probate Ct., Dallas Cnty., Tex. Aug. 19, 2011).  Michael responded by invoking the arbitration clause in the Frost agreement and eventually forcing the dispute into a AAA arbitration (the "Arbitration").

In the Arbitration, Suzann asserted counterclaims against Michael for breach of fiduciary and fraud.  The Arbitration stretched out for several years, culminating in a three-day final hearing in October 2017.  After the final hearing, a panel of three AAA arbitrators issued a final award, finding that Michael had defrauded Suzann, breached his fiduciary duty, and committed negligence (the "Final Award") (Adversary Case No. 21-4003, Dkt. #32, Exhibit 1 at p. 4).  The AAA panel rejected Michael's affirmative defenses of release and waiver based on the Family Settlement Agreement, finding that Michael had fraudulently induced Suzann into signing the Agreement (Adversary Case No. 21-4003, Dkt. #32, Exhibit 1 at p. 4).  Based on these findings, the AAA panel awarded Suzann $49 million in actual damages, $3.9 million in attorneys' fees and costs, and $12.8 million in prejudgment interest (Adversary Case No. 21-4003, Dkt. #32, Exhibit 1 at pp. 5–6).  Critically, the AAA panel also made the following determination:

> A constructive trust exists and is imposed in favor of Suzann Ruff on Michael Ruff's interests, of whatever nature, in any entity which he formed or invested, in whole or in part with monies or property misappropriated from, and originating with Suzann Ruff in all capacities, which the Panel finds includes, but is not limited

to, any interest of whatever nature Michael has in the entities listed on Exhibit "A" attached hereto and made a part hereof for all purposes (Exhibit "A").  Michael Ruff shall hold his ownership interests in such entities as constructive trustee for the benefit of Suzann Ruff, and Suzann Ruff shall be entitled to a lien against such ownership interests to enforce this Award.

(Adversary Case No. 21-4003, Dkt. #32, Exhibit 1 at p. 6).

Suzann then returned to Dallas County Probate Court and sought a final judgment confirming the Arbitration award.  Likewise, Michael moved to vacate the Arbitration award, arguing that he did not agree to arbitrate Suzann's tort claims.  After an extensive evidentiary hearing, the Probate Court entered a final judgment in favor of Suzann, which incorporated the terms of the Arbitration award.  That judgment was subsequently affirmed by the Court of Appeals for the Fifth District of Texas. *Ruff v. Ruff*, No. 05-18-00326-CV, 2020 WL 4592794, at *15 (Tex. App.—Dallas Aug. 11, 2020, pet. denied).

## II.    JMV Holdings

Among the entities identified in the Arbitration award and subsequent judgment as being formed, at least in part, with "monies or property misappropriated" from Suzann is JMV Holdings, LLC ("JMV Holdings") (Adversary Case No. 21-4003, Dkt. #32, Exhibit 1 at p. 9).  JMV Holdings is a Texas limited liability company that was formed by Michael in November 2009—one month after he fraudulently induced his mother into signing the Family Settlement Agreement (Adversary Case No. 21-4003, Dkt. #56, Findings of Fact ¶ 18).  It is managed by JMV Managers, another Texas limited liability company, which has one member:  MAR Living Trust, a living trust created by Michael for the benefit of Jennifer and their minor children.  In December 2009, through JMV Holdings, Michael bought a property and accompanying improvements located on Joyce Way in Dallas, Texas (the "Joyce Way Property") (Adversary Case No. 21-4003, Dkt. #54 ¶ 27). Although Michael purchased the Joyce Way Property in the name of JMV Holdings, he paid the

4

purchase price directly from his personal checking account (Adversary Case No. 21-4003, Dkt. #56, Findings of Fact ¶ 24).

## III.    The JMV Holdings Bankruptcy

JMV Holdings filed a petition for bankruptcy under Chapter 11 on November 9, 2018 (Main Case No. 18-42552, Dkt. #1).  In its initial bankruptcy schedules, JMV Holdings claimed a single asset—the Joyce Way Property (Main Case No. 18-42552, Dkt. #15 at p. 5). The Bankruptcy Court converted the Main Case to a Chapter 7 bankruptcy on May 15, 2019 (Main Case No. 18-42552, Dkt. #25).

Both Jennifer and Suzann filed proofs of claim in the Main Case.  Suzann asserted an unsecured claim for $65 million and an equitable lien on the assets of JMV Holdings (Adversary Case No. 21-4003, Dkt. #54 ¶¶ 36–37).  Jennifer asserted a secured claim for $743,811.82 based on a purported deed of trust that she filed against the Joyce Way Property on the same day that JMV Holdings filed for bankruptcy (Adversary Case No. 21-4003, Dkt. #54 ¶ 38).

In July 2019, the Chapter 7 Trustee sought and obtained permission from the Bankruptcy Court to place the Joyce Way Property on the market (Main Case No. 18-42552, Dkt. #35).  Four months later, the Bankruptcy Court issued an order granting the Chapter 7 Trustee permission to sell the Joyce Way Property under 11 U.S.C. § 363 (the "Sale Order") (Main Case No. 18-42552, Dkt. #47).  In the Sale Order, the Bankruptcy Court acknowledged the proofs of claim filed by Jennifer and Suzann and made clear that "the liens, claims and encumbrances" asserted by both Jennifer and Suzann "attach to the residual proceeds" of the sale to the same extent that they attach to the Joyce Way Property (Main Case No. 18-42552, Dkt. #47 at p. 6).  The Joyce Way Property ultimately sold for roughly $490,000, and the Chapter 7 Trustee currently holds the proceeds of the sale (Adversary Case No. 21-4003, Dkt. #54 ¶ 41).

## IV.      The Adversary Proceeding

In addition to the Main Case, Jennifer initiated the Adversary Case in January 2021.  As the Bankruptcy Court noted, "at its core, [the Adversary Case] involve[d] claims from Suzann Ruff and Jennifer Ruff to the assets of JMV Holdings" (Adversary Case, No. 21-4003, Dkt. #56 at p. 1). Jennifer specifically requested a declaratory judgment stating: (1) that neither the constructive trust in favor of Suzann or the equitable lien imposed by the judgment enforcing the Arbitration Award is enforceable against the proceeds from the sale of the Joyce Way Property, (2) that JMV Holdings and its assets are Jennifer's separate property, and (3) that Jennifer is a third-party beneficiary of the Family Settlement Agreement (Adversary Case No. 21-4003, Dkt. #1).  Jennifer also sought an order disallowing Suzann's claim against JMV Holdings.

The Adversary Case proceeded to trial in December 2021.  After two days of testimony and argument, the Bankruptcy Court issued its Findings of Fact and Conclusions of Law (Adversary Case No. 21-4003, Dkt. #56).  The Bankruptcy Court concluded that Suzann is not barred from claiming that the Joyce Way Property is subject to a constructive trust in her favor, that Jennifer could not claim the benefit of the Family Settlement Agreement, and that Michael used his separate funds to purchase the Joyce Way Property (Adversary Case No. 21-4003, Dkt. #56, Conclusions of Law).  For these reasons, the Bankruptcy Court held that Suzann is entitled to recover the proceeds of the sale of the Joyce Way Property (Adversary Case No. 21-4003, Dkt. #56, Conclusions of Law ¶ 33).  In addition, the Bankruptcy Court held that the deed of trust that Jennifer filed against the Joyce Way was a preferential transfer under 11 U.S.C. § 547, and it partially sustained an objection to Jennifer's proof of claim lodged by the Chapter 7 Trustee, leaving Jennifer with a $15,000 unsecured claim against JMV Holdings (Adversary Case No. 21-4003, Dkt. #56, Conclusions of Law ¶¶ 50–51).  The Bankruptcy Court entered a final judgment

consistent with its Findings of Fact and Conclusions of Law on March 31, 2022 (Adversary Case No. 21-4003, Dkt. #57).

## V.    The Appeal

Jennifer filed her notice of appeal two weeks after the Bankruptcy Court entered its final judgment (Adversary Case No. 21-4003, Dkt. #61).  Jennifer filed her designation of the appellate record and her statement of the issues on appeal before this Court on May 26, 2022 (Dkt. #2). On June 16, 2022, Jennifer her Appellant's brief (Dkt. #9).  Suzann and the Chapter 7 Trustee filed their Appellees' brief on July 1, 2022 (Dkt. #12).   Jennifer filed her reply on July 18, 2022 (Dkt. #16).

## LEGAL STANARD

A district court has jurisdiction to hear appeals from "final judgments, orders, and decrees" of a bankruptcy court.  28 U.S.C. § 158(a)(1).  A bankruptcy court's "findings of fact are reviewed for clear error and conclusions of law are reviewed *de novo.*"  *Drive Fin. Servs., L.P. v. Jordan*, 521 F.3d 343, 346 (5th Cir. 2008); *see also In re Soileau*, 488 F.3d 302, 305 (5th Cir. 2007); *Ferrell v. Countryman*, 398 B.R. 857, 862 (E.D. Tex. 2009).  In reviewing the bankruptcy court's findings of fact, the Court defers to the bankruptcy court's determinations of witness credibility. *Saenz v. Gomez*, 899 F.3d 384, 392 (5th Cir. 2018). Mixed questions of law and fact within a bankruptcy case are also reviewed *de novo.  See, e.g.*, *In re San Patricio Cnty. Cmty. Action Agency*, 575 F.3d 553, 557 (5th Cir. 2009). Ultimately, a reviewing district court may affirm on any ground supported by the record, including one not reached by the bankruptcy court.  *See Hammervold v. Blank*, 3 F.4th 803, 813 (5th Cir. 2021).

## ANALYSIS

In her Appellant's brief, Jennifer raises seven issues for appeal:

1. Whether the Bankruptcy Court erred in concluding that Suzann's claim to an equitable interest in the Joyce Way Property was not barred by res judicata? (Dkt. #9 at pp. 13–14).

2. Whether the Bankruptcy Court erred in concluding that Jennifer's attempt to invoke the Family Settlement Agreement was barred by the doctrine of res judicata? (Dkt. #9 at p. 15).

3. Whether the Bankruptcy Court erred in finding that Michael used his own funds to purchase the Joyce Way Property? (Dkt. #9 at p. 17).

4. Whether the Bankruptcy Court erred in finding that the Joyce Way Property was Michael's separate property? (Dkt. #9 at p. 18).

5. Whether the Bankruptcy Court erred in concluding that the Arbitration award and subsequent judgment traced Michael's misappropriation of assets to JMV Holdings? (Dkt. #9 at p. 19).

6. Whether the Bankruptcy Court erred in concluding that Jennifer received a preferential transfer? (Dkt. #9 at p. 21).

7. Whether the Bankruptcy Court erred in disallowing Jennifer's proof of claim? (Dkt. #9 at p. 21).

The Court addresses each of these issues in turn.

## I.     Appellee Suzann Ruff's Claim to an Equitable Interest in the Joyce Way Property is Not Barred by Res Judicata

Jennifer contends that Suzann's claim to an equitable interest in the proceeds of the sale of the Joyce Way property is barred by the doctrine of res judicata because Suzann did not object to the Sale Order or otherwise litigate the sale of the Joyce Way Property in the Main Case (Dkt. #9 at p. 14). But, as Suzann points out, the Sale Order explicitly preserved the "liens, claims, and encumbrances" asserted by both Suzann and Jennifer by attaching those claims to the "residual proceeds" of the sale (Main Case No. 18-42552, Dkt. #47). And, in any event, Jennifer has not carried her burden of establishing that res judicata applies because she has not shown that Suzann's claim to an equitable interest in the Joyce Way Property "should have been litigated" at the time

of sale. *See Taylor v. Sturgell*, 553 U.S. 880, 907 (2008); *Webb v. Town of St. Joseph*, 560 F. App'x 362, 366 (5th Cir. 2014) (noting that "the party urging res judicata has the burden of proving each essential element by a preponderance of the evidence.").

The doctrine of res judicata bars the litigation of claims that either have been litigated or should have been raised in an earlier suit. *Test Masters Educ. Services, Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005). For res judicata to apply, there must first be a prior judgment rendered by a court of competent jurisdiction. *In re Paige*, 610 F.3d 865, 870 (5th Cir. 2010). Jennifer's brief does not identify any prior judgment, but her contention appears to be that the Bankruptcy Court's Sale Order is a prior judgment that is entitled to preclusive effect (Dkt. #9 at p. 14). The preclusive effect of an order issued by a federal bankruptcy court is a matter of federal law. *See, e.g.*, *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 521 n.9 (5th Cir. 2016) (citing 18B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 4466 (2d ed. 2015)).

The Fifth Circuit uses a four-pronged test for the application of res judicata: (1) the parties must be identical or in privity in both suits, (2) the judgment in the prior action must be rendered by a court of competent jurisdiction, (3) the prior action must have been concluded by a final judgment on the merits, and (4) the same claim or cause of action must have been involved in both actions. *Test Masters*, 428 F.3d at 571. It is undisputed that the first three elements are satisfied here—the parties are identical between the Main Case and the Adversary Case, the Bankruptcy Court is a court of competent jurisdiction, and the Sale Order was a final order within the meaning of 28 U.S.C. § 158(a). So, the only question left before the Court is whether Suzann's claim to an equitable interest in the Joyce Way Property should have been litigated at the time of sale. The Court concludes Suzann could not have litigated her claim to an equitable interest in the Joyce

9

Way Property at the time of sale because there was simply nothing to litigate.

This lack of controversy is spelled out in the Sale Order—the judgment that underlies Jennifer's res judicata defense.  In the Sale Order, the Bankruptcy Court stated that no claims needed to be raised or preserved because "the liens, claims and encumbrances" asserted by both Jennifer and Suzann "attach to the residual proceeds" of the sale to the same extent that they attach to the Joyce Way Property (Main Case No. 18-42552, Dkt. #47 at p. 6).  Instead of addressing this language, Jennifer makes the rather mystifying contention that the Court cannot consider the Sale Order—which the Bankruptcy Court inarguably relied upon in reaching the conclusions of law at the heart of Jennifer's appeal—because the Sale Order is conspicuously absent from the official Record on Appeal (Dkt. #16 at p. 5).[3]  Contrary to Jennifer's contentions, the Court does not review the Bankruptcy Court's conclusions of law in a vacuum, and, instead, it finds that Suzann's claim was preserved by the plain language of the Sale Order.

Indeed, in considering a bankruptcy appeal, a district court may take judicial notice of undisputed facts in accordance with Federal Rule of Evidence 201.  *See, e.g.*, *In re LandSource Communities Dev. LLC*, 485 B.R. 310, 316 (Bankr. D. Del. 2013).  The Court must ensure that the record on appeal "accurately discloses what occurred in the bankruptcy," including items filed in related cases that were considered by the bankruptcy court in reaching the appealed decision.  *In re Imperial Petroleum Recovery Corp.*, No. 13-30466, 2022 WL 90607, at *3 (Bankr. S.D. Tex. Jan. 7, 2022) (citing Fed R. Bankr. P. 8009(e)(1)).  The Court therefore takes judicial notice of the Sale Order.

---

[3] In making this argument, Jennifer fails to acknowledge that, as the Appellant, the burden of providing the Court with a complete appellate record falls squarely on her shoulders.  *See* Fed. R. Bankr. P. 8009; *In re CPDC Inc.*, 221 F.3d 693, 698 (5th Cir. 2000) ("The burden of creating an adequate record [in a bankruptcy appeal] rests with the appellant, who may not urge an issue on appeal if he has failed to provide the appellate court with the requisite record excerpts."); *In re Bagwell*, 741 F. App'x 755, 758 (11th Cir. 2018) ("The person bringing the appeal has the burden of ensuring the record provides all the evidence he relies on in his claims.").

In deciding that "the issue of whether Suzann holds an equitable interest in the Joyce Way Property as a result of a constructive trust was not previously litigated or decided," the Bankruptcy Court expressly relied on the language of the Sale Order (Adversary Case No. 21-4003, Dkt. #56, Conclusions of Law ¶¶ 3–5).  Thus, the Sale Order is properly before the Court, and its plain language establishes that Suzann had no reason to object to or otherwise litigate the sale of the Joyce Way Property.

Given this language, it is unclear what objections Suzann could or should have asserted at the time of sale.  To be sure, as a creditor holding an interest in property that the Chapter 7 Trustee sought to sell, Suzann was entitled to "adequate protection," and creditors frequently object to the sale of property on this basis.  11 U.S.C. § 363(e); *In re DeSardi*, 340 B.R. 790, 796 (Bankr. S.D. Tex. 2006).  But a creditor's interest in real property that is subject to sale is adequately protected when the interest attaches to the proceeds of the sale.  *In re WestPoint Stevens, Inc.*, 600 F.3d 231, 257 (2d Cir. 2010) ("[P]ermitting the sale of the Debtor's assets free and clear of encumbrances but attaching replacement liens on the proceeds of such sale to the same extent, validity, and priority as the original liens is squarely within the letter and purpose of adequate protection.") (cleaned up); *MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89, 94 (2d Cir. 1988) ("It has long been recognized that when a debtor's assets are disposed of free and clear of third-party interests, the third party is adequately protected if his interest is assertable against the proceeds of the disposition.").  This is true in cases like this one, where a creditor asserts an equitable interest in real property by virtue of a constructive trust.  *In re DVI, Inc.*, 306 B.R. 496, 504 (Bankr. D. Del. 2004) (noting that "[c]ourts have permitted the sale of property free and clear of constructive trust claims or equitable liens, so long as they attach to the proceeds of sale.").  The Bankruptcy Court provided Suzann with "adequate protection" here because it attached her claim to the proceeds of

the sale of the Joyce Way Property (Main Case No. 18-42552, Dkt. #47 at p. 6).  Thus, there is no indication that Suzann should have been obligated to litigate her interest in the proceeds of the Joyce Way Property at the time of sale.

And, ultimately, it is not Suzann's burden to show that she had no claim to assert at the time of sale; it is Jennifer's burden to prove that res judicata applies here. *Taylor*, 533 U.S. at 907. Jennifer has failed to carry that burden.  As a result, the Court holds that the Bankruptcy Court correctly rejected Jennifer's contention that Suzann's equitable interest in the Joyce Way Property is barred by the doctrine of res judicata.

## II.    Appellant Jennifer Ruff Cannot Claim the Benefit of the Family Settlement Agreement

It is beyond dispute that Jennifer is not a party to the Family Settlement Agreement (Adversary Case No. 21-4003, Dkt. #67 at p. 36:2–3).  Despite this fact, Jennifer seeks to invoke the release and indemnity provisions of the Family Settlement Agreement here (Dkt. #9 at p. 17). To successfully invoke these provisions, Jennifer must establish that she is a third-party beneficiary of that Agreement *and* that she is not bound by the Final Award and subsequent judgment, which found that the Family Settlement Agreement was the product of fraud.  She can do neither.  In addressing this issue below, the Bankruptcy Court concluded that, even assuming that Jennifer is a third-party beneficiary of the Family Settlement Agreement, she is barred by res judicata from asserting any defenses based on that Agreement because she is in privity with Michael (Adversary Case No. 21-4003, Dkt. #56, Conclusions of Law ¶ 17).  The Court agrees with the holding of the Bankruptcy Court below.

### A.    Appellant Jennifer Ruff Was Not a Third-Party Beneficiary of the Family Settlement Agreement

Indeed, while the Court agrees with the Bankruptcy Court's conclusion, it is far from a safe

assumption that Jennifer is a third-party beneficiary of the Family Settlement Agreement.  As an initial matter, Jennifer's purported status as a third-party beneficiary is a matter of Texas law because neither party has indicated that another jurisdiction's law controls, and the Family Settlement Agreement was made in Texas.  *Johnson v. Manpower Prof'l Servs., Inc.*, 442 F. App'x 977, 983 (5th Cir. 2011) (quoting *Austin Bldg. Co. v. Nat'l Union Fire Ins. Co.*, 432 S.W.2d 697, 701 (Tex. 1968)).  Under Texas law, Jennifer's status as a third-party beneficiary is a matter of law for the Court to decide *de novo*.  *First Bank v. Brumitt*, 519 S.W.3d 95, 106 (Tex. 2017).[4]

In Texas, there is a presumption against third-party beneficiary status.  *S. Tex. Water Auth. v. Lomas*, 223 S.W.3d 304, 306 (Tex. 2007).  A third party seeking to overcome this presumption must establish that the contracting parties "intended to secure a benefit to that third party" and that they "entered into the contract for the third party's benefit."  *First Bank*, 519 S.W.3d at 102.  It is not enough for the third party to show that it would benefit from the parties' performance; or that the parties knew that the third party would benefit.  *Lomas*, 223 S.W.3d at 306.  Nor is it enough for the third party to show that it intended or expected to benefit from the contract—it is only the intent of the contracting parties that matters.  *First Bank*, 519 S.W.3d at 102.

In determining the intent of the contracting parties, the Court must look solely to the language of the contract.  *Id.*  Because of the presumption against noncontracting beneficiaries, the contract must "express intent to make a noncontracting party a third-party beneficiary in clear and unequivocal language."  *Allen v. Tex. Children's Health Plan*, 649 S.W.3d 830, 835 (Tex. App.—Houston [1st Dist.] 2022, no pet.).  Thus, third-party beneficiary status cannot be implied and any

---

[4] The Bankruptcy Court did not make a definite conclusion on Jennifer's alleged third-party beneficiary status.  But the record makes clear that this issue was fully presented to the Bankruptcy Court at trial and, thus, that it is properly before the Court.  *See English v. Cage*, 4:21-CV-01804, 2021 WL 5741494, at *2 (S.D. Tex. Dec. 1, 2021) (noting that a district court may decide an issue that is supported by the record, even if it is not an issue reached by the bankruptcy court).

doubt about the contracting parties' intent must be resolved against the recognition of a third-party beneficiary. *First Bank*, 519 S.W.3d at 103.

The Family Settlement Agreement, which the Bankruptcy Court admitted into evidence at trial, contains no "clear and unequivocal" language expressing an intent to make Jennifer a third-party beneficiary (Adversary Case No. 21-4003, Dkt. #66 at p. 31).  In fact, the Family Settlement Agreement contains no language of any kind that expresses an intent to make Jennifer a third-party beneficiary (Adversary Case No. 21-4003, Dkt. #42, Exhibit C).  Rather, it specifically defines a collection of "Releasees" that are covered by the Agreement—a group that includes Michael, the various entities that Michael controlled, the "employees, employers, agents, representatives, partners, parents, subsidiaries, predecessors, successors, assigns, [and] insurers," of those entities, and "any other affiliated or related entities" (Adversary Case No. 21-4003, Dkt. #42, Exhibit C). Jennifer does not "clearly and unequivocally" fall within any of those categories.  And so, given the absence of any indication that the contracting parties intended to benefit Jennifer, the Court concludes that Jennifer is not a third-party beneficiary of the Family Settlement Agreement. *First Bank*, 519 S.W.3d at 512.

## B.   Appellant Jennifer Ruff is Barred from Asserting Any Defenses Based on the Family Settlement Agreement

Even if Jennifer could establish her third-party beneficiary status, the Bankruptcy Court correctly held that the doctrine of res judicata bars her from asserting any defenses based on the Agreement.  Like Jennifer's third-party beneficiary status, the preclusive effect of the state court judgment incorporating the Final Award is a matter to be determined under Texas law. *See, e.g.*, *Richardson v. Wells Fargo Bank, N.A.*, 839 F.3d 442, 449 (5th Cir. 2016).  Under Texas law, a finding of res judicata requires: (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on

14

the same claims as were raised or could have been raised in the first action.  *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996).

Of these elements, only the second is in dispute here.  As the Bankruptcy Court noted, the Final Award has preclusive effect for res judicata purposes.  *See, e.g.*, *Peterson, Goldman & Villani, Inc. v. Ancor Holdings, LP*, 584 S.W.3d 556, 563 n.4 (Tex. App.—Fort Worth 2019, pet. denied) ("An arbitration award is treated as a prior final judgment and has preclusive effect for purposes of res judicata.").  In addition, there is a final judgment from the Dallas County Probate Court incorporating the terms of the Final Award, including the finding that Michael fraudulently induced Suzann into signing the Agreement Adversary Case No. 21-4003, Dkt. #56, Conclusions of Law ¶ 14).  Thus, the only element addressed by either party on appeal is whether Jennifer was in privity with Michael for res judicata purposes.

Jennifer specifically contends that the Bankruptcy Court erred in concluding that Jennifer shared an identity of interests with Michael such that he represented her interests in the Arbitration and the related state court proceedings (Dkt. #9 at p. 15). In the context of res judicata, privity exists if the parties share an identity of interests in the basic legal right that is the subject of the litigation.  *Amstadt*, 919 S.W.3d at 653.  As Jennifer correctly notes, "close family relationships are not sufficient *by themselves* to establish privity with the original suit's party, or to bind a non-party to that suit by the judgment entered therein."  *Freeman v. Lester Coggins Trucking, Inc.*, 771 F.2d 860, 863 (5th Cir. 1985) (emphasis added).  But Jennifer's privity with Michael is not based solely on their marital relationship.  Rather, Jennifer's claim to an interest in the Agreement is derives entirely from Michael, as evidenced by the fact that she claims to be a third-party beneficiary of the Agreement in the first place.  Put differently, Jennifer has no interests in the Agreement aside from those that were represented by Michael in the Arbitration.  And, as the Fifth

15

Circuit has previously held, spouses are in privity with one another when, as here, the non-party spouse's interest in an original suit derives from, and is closely aligned with, their spouse's interests.  *See Eubanks v. FDIC*, 977 F.2d 166, 170 (5th Cir. 1992).  Given the identity of the interests shared between Michael and Jennifer regarding the Arbitration and the subsequent final judgment, the Court concludes that the Bankruptcy Court correctly concluded that Jennifer is barred by res judicata from claiming the benefit of the Agreement.

For these reasons, the Court affirms the Bankruptcy Court's conclusion that Jennifer cannot claim the benefit of the Agreement's release and indemnity provisions (Adversary Case No. 21-4003, Dkt. #56, Conclusions of Law ¶ 17).

## III.   The Bankruptcy Court's Factual Findings Regarding the Joyce Way Property Are Not Clearly Erroneous

In her third and fourth issues for appeal, Jennifer argues that the Bankruptcy Court made several findings concerning the Joyce Way Property that were clearly erroneous (Dkt. #9 at pp. 17–19).  Specifically, Jennifer contends that the Bankruptcy Court erroneously found that Michael used his own funds to purchase the Joyce Way Property and that the Property was therefore subject to Suzann's equitable trust (Dkt. #9 at p. 17).  Jennifer also contends that the Bankruptcy Court erred in finding that the Joyce Way Property was Michael's separate property under a premarital agreement between Michael and Jennifer (Dkt. #9 at p. 18).  Under the clear error standard, the Court will reverse factual findings made by the Bankruptcy Court only if, on the entire record, it is "left with the definite and firm conviction that a mistake has been made."  *Otto Candies, L.L.C. v. Nippon Kaiji Kyokai Corp.*, 346 F.3d 530, 533 (5th Cir. 2003).  Having reviewed the record here, the Court concludes that neither of the challenged findings rise to the level of clear error.

Indeed, each of the Bankruptcy Court's findings of fact regarding the purchase and legal ownership of the Joyce Way Property find support in the record.  For example, it is undisputed

Michael used funds from his personal account to purchase the Joyce Way Property (Adversary Case No. 21-4003, Dkt. #56, Findings of Fact ¶ 29).  Yet, according to Jennifer, she purchased the Joyce Way Property after Michael gave her a portion of his $3 million dollar bonus as a gift.  Under the premarital agreement that Jennifer offered into evidence at trial, such a gift must be "evidenced in writing, signed, and acknowledged before a notary public by both parties" (Adversary Case No. 21-4003, Dkt. #42, Exhibit D at p. 19).  Jennifer never produced any writing documenting a gift from Michael. Nor did she produce any documents establishing that Michael actually received a bonus.

The only evidentiary support for Jennifer's version of events comes from her own testimony, along with the testimony of Michael.   But the bottom line is that the Bankruptcy Court did not find Jennifer's version of events to be credible (Adversary Case No. 21-4003, Dkt. #56, Findings of Fact ¶ 25).  As the finder of fact, the Bankruptcy Court was in the best position to assess Jennifer and Michael's credibility, and the Court is in no position to disturb that assessment. *In re Martin*, 963 F.2d 809, 814 (5th Cir. 1992) ("If the bankruptcy judge finds one version of events more credible than other versions, this Court is in no position to dispute the finding.").

Underlying Jennifer's argument here is her mistaken contention that the Bankruptcy Court found that the premarital agreement did not exist (Dkt. #9 at p. 17).  The Bankruptcy Court made no such finding.  Rather, it accepted Jennifer's argument that the premarital agreement existed and found that the alleged gift from Michael to Jennifer was not evidenced in a writing as required by the agreement (Adversary Case No. 21-4003, Dkt. #56, Findings of Fact ¶ 29).  Because the premarital agreement states that "[a]ny other attempt at making a gift of separate property between the parties shall be void," the Bankruptcy Court correctly found that there was no valid gift of separate property to Jennifer (Adversary Case No. 21-4003, Dkt. #56, Findings of Fact ¶ 29).

**IV.    The Bankruptcy Court Did Not Err in Concluding That the Arbitration Award and Judgment Traced Michael Ruff's Misappropriation of Assets to JMV Holdings**

Jennifer also disputes the Bankruptcy Court's factual findings regarding the tracing of assets from Michael's fraud and misappropriation of funds to JMV Holdings and the Joyce Way Property (Dkt. #9 at pp. 19–20).  Because each of the Bankruptcy Court's findings is supported by the record, the Court refuses to disturb them on appeal.

In particular, Jennifer challenges the Bankruptcy Court's finding that both JMV Holdings and JMV Managers are on a "list of entities Michael formed or invested, in whole or in part with monies or property misappropriated from and originating with Suzann" (Adversary Case No. 21-4003, Dkt. #56, Findings of Fact ¶ 22).  According to Jennifer, this finding is flawed because the Final Award merely provided a list of entities, including JMV Holdings, in which Michael could have had an interest that he derived from his misappropriation of Suzann's assets (Dkt. #9 at p. 20).  The Court finds this argument unavailing for two reasons.

First, Jennifer's strained reading of the Final Award is far from definitive.  In fact, as the Bankruptcy Court noted, the Final Award states that a constructive trust attaches to Michael Ruff's interests in "any entity which he formed or invested . . . with monies or property misappropriated from, and originating with Suzann Ruff, in all capacities, which . . . includes, but is not limited to any interest of whatever nature Michael has in the entities listed on Exhibit 'A'," which includes JMV Holdings (Adversary Case No. 21-4003, Dkt. #32, Exhibit 1 at p. 6).  This language can properly be read as a finding that the entities listed on Exhibit A are some, but not all, of the entities that Michael formed or invested in with money misappropriated from Suzann, and that a constructive trust attaches to whatever interest Michael has in those entities.  And, in any event, Jennifer offers no support for her contention that the Arbitration panel did not conduct any tracing, and the Bankruptcy Court was not obligated to accept her argument.

Second, irrespective of the Final Award, the Bankruptcy Court pointed to specific facts which indicate that the Joyce Way Property was purchased with funds that Michael misappropriated from Suzann (Adversary Case No. 21-4003, Dkt. #56, Findings of Fact ¶¶ 31–37).  Indeed, the Bankruptcy Court found that the $3 million "bonus" that Michael used to purchase the Joyce Way property was actually a portion of a $15 million payment sent to Michael by ARS Investment Holdings to purchase three entities that were also listed on Exhibit A in the Final Award (Adversary Case No. 21-4003, Dkt. #56, Findings of Fact ¶¶ 33–35).  Michael received a $3 million wire from ARS Investment Holdings on the same day that ARS entered into an asset purchase agreement to acquire the three entities (Adversary Case No. 21-4003, Dkt. #56, Findings of Fact ¶ 32).  Michael could not point to any documents reflecting his entitlement to a $3 million bonus (Adversary Case No. 21-4003, Dkt. #56, Findings of Fact ¶ 35).  Nor could he explain "where or to whom" the remainder of the $15 million purchase price went (Adversary Case No. 21-4003, Dkt. #56, Findings of Fact ¶ 34).  The Bankruptcy Court took these facts into consideration and determined that Michael's testimony regarding the source of the funds used to purchase the Joyce Way Property was not credible.  As stated above, it is not the Court's role to second-guess the Bankruptcy Court's assessment of a witness's credibility.  *In re Martin*, 963 F.2d at 809.

On this record the Court cannot conclude that the Bankruptcy Court's findings regarding the tracing of assets used to purchase the Joyce Way property were the product of clear error.

## V.     The Bankruptcy Court's Holdings Regarding Appellant's Proof of Claim Are Not Erroneous

In her sixth and seventh issues on appeal, Jennifer contends that the Bankruptcy Court created an erroneous "unresolved dilemma" when it held that she received a preferential transfer while also partially sustaining the Chapter 7 Trustee's objections to her proof of claim (Dkt. #9 at

pp. 21–22).  According to Jennifer the Bankruptcy Court held that she was not a creditor when it "disallowed" her proof of claim while also necessarily holding that she was a creditor for the purposes of its preferential transfer analysis under 11 U.S.C. § 547 (Dkt. #9 at pp. 21–22).

This argument, which borders on frivolous, misstates the Bankruptcy Court's holdings. The Bankruptcy Court did not "disallow" Jennifer's proof of claim—it sustained the Chapter 7 Trustee's objection *in part*, leaving Jennifer with an unsecured claim for $15,000 (Adversary Case No. 21-4003, Dkt. #57 at p. 2).  Relatedly, the Bankruptcy Court held that the deed of trust that Jennifer executed on the day that JMV Holdings filed for bankruptcy was an improper preferential transfer (Adversary Case No. 21-4003, Dkt. #57 at p. 2).  There is no tension between these holdings.

Of course, in establishing that preferential transfer occurred, the Chapter 7 Trustee must show that a transfer was made for the benefit of a creditor.  11 U.S.C. § 547(b); *In re Loggins*, 513 B.R. 682, 696 (Bankr. E.D. Tex. 2014).  But the Bankruptcy Court never held that Jennifer is not a creditor (Adversary Case No. 21-4003, Dkt. #57 at p. 2).  Instead, it held that the majority of her claim for $743,811.82 was improper while still allowing her an unsecured claim.  In short, these holdings create no "dilemma" and the Court will not overturn them.

## CONCLUSION

For the foregoing reasons, the judgment of the Bankruptcy Court is **AFFIRMED**.

**IT IS SO ORDERED.**
 **SIGNED this 6th day of June, 2023.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE